# DECLARATION of ROBERT GILINSKY

I, Robert Gilinsky, do hereby declare:

## BACKGROUND/EXPERIENCE

1.      I am a Task Force Agent (TFO) with the Drug Enforcement Administration (DEA) and have been since 2022.  I have been employed as a Police Officer and Detective at the Grants Pass Police in Grants Pass, Oregon, since 2017.  My current assignment is at the Medford Resident Office in Oregon.  My training and experience include completion of the DEA basic course, Advanced Search and Seizure, and hundreds more hours of law enforcement training.  This training included the investigation, detection, and identification of controlled substances.  I have consulted and conversed with several other agents and officers from various local, state, and federal agencies on various drug cases, including the distribution of heroin, cocaine, methamphetamine, marijuana, fentanyl, and other controlled substances.  As a result of this and my own experience and training, I am familiar with heroin, cocaine, methamphetamine, marijuana, fentanyl, and other controlled substances and the methods employed by traffickers of these substances.

## PURPOSE OF THIS DECLARATION

2.      This declaration is submitted in support of a complaint *in rem* for forfeiture of the property located at 3603 Leland Road, Wolf Creek, Oregon, hereafter referred to as **"Defendant Real Property":**

   A. Josephine County Official Records, document 2011-004666, shows that on or about April 15, 2011, Scott A. Shipman was quitclaimed an undivided one third (1/3) interest and Sky Anthony Shipman was quitclaimed an undivided two third (2/3) interest in the **Defendant Real Property**, with right of survivorship. [1]

---

[1] Oregon DMV records list Sky Anthony Shipman as deceased as of June of 2019.

**Declaration of Robert Gilinsky**                                                                            **Exhibit A Page 1**



B. Property ID R301089; Parcel ID/APN: 34-06-05-00-000302
Commonly known as 3603 Leland Road, Wolf Creek, Oregon and legally described as follows:

All that certain real property, with the tenements, hereditaments and appurtenances thereunto belonging or is any way appertaining, situated in Josephine County, State of Oregon, described as follows, to-wit:

Beginning at the intersection of the North line of the South Half of the South Half of the Southwest Quarter of Section 5 with the East line of the Southwest Quarter of Section 5 and running thence Westerly along the aforesaid East-West line to its intersection with the center line of the Southwest Quarter of Section 5 thence following the center line of the Southwest Quarter of Section 5 Northerly to its intersection with the center line of Graves Creek; thence following the center line of Graves Creek in a generally Northeasterly direction until its intersection with the East line of the Southwest Quarter of Section 5, which point is approximately 998 feet North of the Southeast corner of the Southwest Quarter of Section 5; thence following the East line of the aforesaid Southwest Quarter Southerly to the point of Beginning. All located in Township 34 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon.

3.      In this declaration I will demonstrate, based on the evidence I have reviewed, that there is probable cause to believe, and I do believe that **Defendant Real Property** located at 3603 Leland Road, Wolf Creek, Oregon, and outlined above was used or intended to be used to facilitate the illegal production, conversion, and/or distribution of methamphetamine, in violation

**Declaration of Robert Gilinsky**                                                                                          **Exhibit A Page 2**

of 21 U.S.C. §§ 841, 846, and 856, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7).

4.  The facts set forth in this declaration are based on the following: my own personal observations, my training and experience, and information obtained from other agents, deputies, and officers during my participation in this investigation. This declaration is for the limited purpose of establishing probable cause. Therefore, I have not set forth each fact learned during the investigation, but only those facts and circumstances necessary to establish probable cause.

## SUMMARY OF THE INVESTIGATION

5.  In February 2024, police executed a search warrant at 303 Colonial Drive, Grants Pass, Oregon, for the delivery of a controlled substance. During the search warrant, investigators located approximately 63 grams of a white crystal substance, which presumptively tested positive for methamphetamine; 7 firearms; $3,133 dollars in cash; as well as packaging material, to include a bag with wording that said ½ pound. Upon questioning, one of the occupants of the residence, Michael Dills (DILLS) was confronted with the fact that investigators had been monitoring the residence and knew large amounts of methamphetamine was occasionally obtained by DILLS from the Colonial Drive residence. DILLS responded by saying "It comes, and it goes".

**Phone Warrant**

6.  Law enforcement seized a cell phone that belonged to DILLS via a search incident to arrest, and a federal search warrant was later applied for and granted by United States Magistrate Judge Mark Clarke. During the review of the cell phone, investigators found evidence of drug trafficking throughout the phone and were able to identify Anthony HORTON as DILLS's main source of supply for methamphetamine. Investigators also determined the

source of supply for HORTON was an individual HORTON referred to as "Scott", as shown below:

| | |
|---|---|
| December 31, 2023: | DILLS asked HORTON "Can I get another qp[2] today or more?" |
| January 4, 2024: | HORTON texts DILLS "OK mike im headed home now so do you know whut you need ???" |
| | "And can you do me a favor shorty wants something as well and im going to meet her there can you find out what she wants also ???" |
| | "Please" |
| January 5, 2024: | DILLS texts HORTON "Call me please". |
| January 5, 2024: | HORTON texts DILLS "Hay mike im out at the moment at least till scott gets back from canyonvill but im not sure when that will be. When he does ill call you and give you the rundown ok sorry bro" |
| | "Ok ill have access when he gets home tomorrow!!! Brother" |

7.  Numerous conversations found in DILLS's phone showed that his source of supply was Anthony HORTON and HORTON's source of supply was an individual referred to as "Scott". Through surveillance on DILLS and HORTON and a review of records pertaining to prior police call outs, investigators determined that HORTON lived in a travel trailer parked at 3603 Leland Road in Wolf Creek, the **Defendant Real Property**. Josephine County property records showed that the **Defendant Real Property** was co-owned by Scott SHIPMAN and his deceased son Anthony, who died in 2019 prior to this investigation. Surveillance confirmed however that Scott SHIPMAN (SHIPMAN) did still currently reside in a house on the **Defendant Real Property**.

---

[2] I know from training and experience that "qp" typically refers to a quarter pound of methamphetamine.

**Declaration of Robert Gilinsky**                                                      Exhibit A Page 4

**Oregon State Wiretap**

8.  Between June 5, 2024, and August 7, 2024, investigators obtained through an Oregon State Wiretap numerous drug related phone calls HORTON engaged in with his supplier SHIPMAN and various buyers. The conversations showed HORTON obtained the drugs he needed for his buyers from SHIPMAN at the **Defendant Real Property**. HORTON made numerous drug deals over the telephone with third parties in which he obtained the methamphetamine from his home, a travel trailer parked at **Defendant Real Property,** to complete the deals as shown below:

- On June 12, 2024, at approximately 1923 hours, DILLS called HORTON. DILLS is then heard asking a third party how much they wanted. DILLS then asks HORTON if he can bring them something, in which HORTON responded saying probably. HORTON then asks DILLS what he needs. DILLS first asks for a half and then changed it to a quarter. HORTON says sure, but it will be a few minutes because he's not at home but is heading there in a few minutes. DILLS then responded with OK.

- On June 23, 2024, at approximately 2013 hours, showed that during an intercepted phone call SHIPMAN asked if HORTON was at his place (the travel trailer). HORTON said yes. SHIPMAN told HORTON to come over to the car where I have some "glass[3]" for you. HORTON said he would be right there.

Search Warrant

9.  On August 7, 2024, law enforcement served state search warrants at multiple locations, including the **Defendant Real Property**. Upon executing the warrant at the

---

[3] I know from my training and experience, that "glass" is typically a term used when referring to methamphetamine.

**Declaration of Robert Gilinsky**                                                     Exhibit A Page 5

**Defendant Real Property**, law enforcement seized approximately 7,485.2 grams (approximately 16.5 pounds) of suspected methamphetamine from under SHIPMAN's bed at the residence. They also seized approximately 636.4 grams of suspected methamphetamine, four firearms, and $3,950 in cash from HORTON's trailer, which was on the premises of **Defendant Real Property**. The methamphetamine was later tested at DEA's Western Laboratory, where the substances were confirmed to be mostly Methamphetamine Hydrochloride.[4]

      10.    During the warrant, HORTON spoke with investigators and admitted to selling methamphetamine while living on **Defendant Real Property**. He also admitted that there was approximately one pound of methamphetamine in his trailer, where he resided, at the time of the warrant. HORTON also admitted to investigators that at times, he was selling approximately a pound of methamphetamine a week. HORTON was then lodged at the Josephine County Jail on state charges including Unlawful Possession of Methamphetamine, Delivery of Methamphetamine, Possession of Prohibited Firearm or Silencer, and Felon in Possession of a Firearm. HORTON ultimately plead guilty in October of 2024 to Delivery of Methamphetamine and Possession of Prohibited Firearm or Silencer. Pictures from HORTON's trailer below show some of the drugs and cash seized from HORTON.

---

[4] Lab tests showed the substance purity ranged from 93%-100%.

**Declaration of Robert Gilinsky**                                          **Exhibit A Page 6**




11. SHIPMAN was present in the main residence at the time of the warrant at the **Defendant Real Property.** SHIPMAN stated that Sky Anthony Shipman, also a listed owner of the property, was his son but was now deceased. SHIPMAN provided investigators the passcode for a safe, found under his bed. When asked what was in the safe, SHIPMAN said, "you'll find out" and then quickly asked for an attorney. Inside of SHIPMAN's safe, investigators located approximately 7,485.2 grams of methamphetamine, as shown below. SHIPMAN, who had three misdemeanor convictions for Assault, Unlawful Possession of Methamphetamine, DUII and a felony conviction for Theft of US Government Property, was then lodged at the Josephine County Jail on charges of Delivery of Methamphetamine and Felon in Possession of a Firearm.




**Declaration of Robert Gilinsky**                                   **Exhibit A Page 7**

12.   Jerry BROWN (BROWN) and his girlfriend Kristine ANKENEY (ANKENEY) were also present in the residence at the time of the warrant at the **Defendant Real Property.** BROWN spoke with investigators and explained that he and ANKENEY lived in the main residence, in a room off the kitchen area. He admitted to knowing methamphetamine was present at the property. BROWN told investigators that SHIPMAN and HORTON provided him with his own methamphetamine in exchange for doing work around the property. ANKENEY admitted to having a small amount of methamphetamine in her purse, before being arrested on an active warrant.

## CONCLUSION

13.   In summary, the evidence presented in this declaration shows that during the investigation from February 2024 to August 2024, investigators identified HORTON as a mid-level drug dealer for SHIPMAN, the source of supply. Investigators also confirmed that multiple drug deals had occurred in which both HORTON and SHIPMAN utilized **Defendant Real Property** for the distribution of narcotics, and as the stash house location. Although the Oregon State Wiretap and text messages listed above only represent a portion of the drug related calls investigators obtained related to HORTON's drug activities, these conversations along with interviews of HORTON, SHIPMAN, BROWN, and ANKENEY, additional surveillance by investigators, and the corresponding drug and cash seizures show that SHIPMAN and HORTON were using **Defendant Real Property** for the distribution of narcotics.

14.   Based on the foregoing, I have probable cause to believe, and I do believe that **Defendant Real Property** was used or intended to be used to facilitate the distribution of methamphetamine, in violation of 21 U.S.C. §§ 841, 846, and 856, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7).

15.     I have presented this declaration to Assistant United States Attorney Christopher Cardani who has advised me that in his opinion, the proposed complaint is supported by probable cause.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

                Executed this 14th day of April 2025

                <u>s/ *Robert Gilinsky*</u>
                Robert Gilinsky
                TFO
                Drug Enforcement Administration